UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAE SUNG HI TECH CO., LTD., a South Korean Limited Liability Company; FIRST 2 MARKET PRODUCTS, LLC, an Ohio Limited Liability Company; and SEHYANG INDUSTRIAL CO., LTD., a South Korean Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>D&B SALES, INC., a Nevada Based Corporation; DALE IRWIN, an individual resident of the State of Nevada; and BOBBI IRWIN, an individual resident of the State of Nevada,<br><br>Defendants. | Case No. 2:22-cv-00030-ART-BNW<br><br>ORDER ON:<br><br>DEFENDANTS' MOTION TO STAY (ECF No. 90), MOTION FOR SUMMARY JUDGMENT (ECF No. 74), MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 75)<br><br>PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION (ECF No. 80), MOTION FOR SUMMARY JUDGMENT (ECF No. 81) |

Plaintiffs Dae Sung Hi Tech Co., Ltd., First 2 Market Products, LLC, and Seyhang Industrial Co, Ltd. bring this lawsuit against Defendants D&B Sales, Inc., Dale Irwin, and Bobbi Irwin, alleging patent infringement in violation of 35 U.S.C. § 271, and violation of the Nevada Deceptive Trade Practices Act ("NDTPA"). Before the Court are five motions: Defendants' motion to stay proceedings (ECF No. 90), Plaintiffs' motion for summary judgment on all claims (ECF No. 81), Plaintiffs' motion for permanent injunction (ECF No. 80), Defendants' motion for summary judgment on affirmative defenses (ECF No. 75), and Defendants' motion for judgment on the pleadings as to the NDTPA claim (ECF No. 74).

For the reasons discussed below, the Court grants in part Defendants' motion to stay this action pending the outcome of Defendants' request for ex parte

reexamination with the U.S. Patent and Trade Office ("USPTO"). For this reason, and because they are premature, Court denies both of Plaintiffs' motions without prejudice and with leave to refile. The Court also grants a stay as to Defendants' affirmative defense of inequitable conduct and as to Defendants' defense of unclean hands under the theory that Plaintiffs withheld information from the USPTO. However, the Court considers the other affirmative defenses in Defendants' motion for summary judgment, as well as Defendants' motion for judgment on the pleadings because issues of patent validity are not implicated. The Court considers and denies both motions.

## I.    BACKGROUND

Plaintiffs Dae Sung and First 2 Market filed this action against Defendants in January 2022, alleging patent infringement in violation of 35 U.S.C. § 271 and violation of the NDTPA. Defendants filed motion to dismiss on the grounds that Plaintiffs did not have standing to enforce the patent at issue. (ECF No. 41.) After a hearing, the Court allowed Sehyang, the owner of the patent at issue, to join this action. (ECF No. 70.) The Court denied as moot several pending motions in the case with leave to refile. (*Id.*) Plaintiffs then filed an amended complaint, with Sehyang as a Plaintiff, alleging the same causes of action as the original complaint. (ECF No. 71.) Both parties subsequently filed dispositive motions, now before the Court. (ECF Nos. 74; 75; 80; 81.) The Court heard oral argument on these motions on January 10, 2025. On January 21, 2025, Defendants filed a motion to stay this action, which Plaintiffs oppose. (ECF Nos. 90; 91.)

### A. Plaintiffs' Factual Allegations

Plaintiffs allege that Defendants have infringed on their patent rights to U.S. Pat. No. 7,503,696 ("'696 patent") and violated the NDPTA by purchasing and reselling devices which infringe on the '696 patent. Plaintiffs' amended complaint makes the following factual allegations in support of their claims:

Plaintiff Sehyang is the patent owner of the '696 patent, issued on March

17, 2009. (ECF No. 71 at 3.) On March 7, 2011, Sehyang licensed the '696 patent to Plaintiff Dae Sung. (*Id.*) Plaintiff First2Market is the exclusive distributor in the United States of devices covered by the '696 patent. (*Id.*) The GRIPSTIC® is a bag sealing device covered by the '696 patent. (*Id.* at 4.) Defendants have entered into contracts or relationships with third parties to purchase bag sealing devices which infringe on the '696 patent. (*Id.*) Specifically, Defendants have admitted to buying infringing bag sealing devices on at least one occasion in Florida. (*Id.*) Defendants have done so knowingly and willingly and with the purpose of re-selling the infringing devices. (*Id.* at 6.) Defendants have sold the infringing devices at state and/or county fairs in Iowa, Kentucky, Indiana, Nevada, and Ohio. (*Id.* at 5.) Defendants have identified the infringing devices at trade shows during the years 2017-2019 as "Grip Stix," "Grip Sticks," and "Lock and Seal Sticks." (*Id.* at 6) Defendants have admitted to sales of the infringing devices of at least $4,000. (*Id.* at 5, 6.) Due to Defendants actions, Plaintiffs have and continue to suffer damages including lost sales and product confusion. (*Id.* at 5, 7.)

## II. Plaintiffs' Motion for Summary Judgment on Patent and NDTPA Claims (ECF No. 81) and Motion for Permanent Injunction (ECF No. 80)

As discussed below, because Plaintiffs' motions are premature, and because the Court grants Defendants' motion to stay further proceedings in this action[1], the Court denies Plaintiffs' motion for summary judgment and motion for permanent injunction without prejudice.

### A. Failure to Follow Local Patent Rules

The Court notes that the parties in this case have failed to follow many of

---

[1] The issue of patent validity is implicated in both of Plaintiffs' motions, including as to summary judgment on their NDTPA claims because these are premised on infringement of a valid patent.

the Local Patent Rules for the District of Nevada. It appears that the parties were aware of the rules, as they exchanged initial disclosures pursuant to LPR 1-8 and LPR 1-10. (*See* ECF Nos. 15; 20.) LPR 1-22 provides a sample discovery plan and scheduling order for patent cases, in which the parties propose dates for discovery as well as for the claim construction process to occur before any dispositive motions are filed—including exchange of terms, briefing, hearings, and tutorials. LPR 1-13 to 1-18 provide the rules for the schedule for this process. Here, the parties joint scheduling order and discovery plan did not include this process. (ECF Nos. 16; 17). Thus, the parties both engaged in discovery and submitted dispositive motions prior to any claim construction occurring. The claim construction process is necessary for the Court to rule on Plaintiffs' dispositive motions because they involve construction of the patent claims.[2] Plaintiffs' motions are therefore premature. For this reason and because the Court enters a stay in this action, these motions are denied with leave to refile after the stay is lifted and the parties have complied with the Local Patent Rules regarding claim construction and mandatory settlement conference.

**III.    Defendants' Motion to Stay Proceedings (ECF No. 90)**

Defendants have moved to stay this action pending ex parte reexamination of the '696 patent. Defendants filed a Request for Ex Parte Reexamination of the '696 patent with the USPTO on January 20, 2025, requesting reexamination of Claims 1 and 7 of the patent, on the grounds that two Japanese patents which were identified in the Japanese Patent Office's Notice of Reasons for Refusal constitute prior art and raise substantial new questions of patentability. (ECF No. 90-1 at 2-4.) On February 11, 2025, the USPTO granted the request for ex parte reexamination of the '696 patent, stating that the two Japanese patents raise substantial new questions of patentability with respect to claims 1 and 7. (ECF

---

[2] Defendants' dispositive motions do not involve claim construction, and the Court will rule on them in this order.

4

No. 92-1.)

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts in this District have noted a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.'" *Unwired Planet, LLC v. Google Inc.*, No. 3:12-CV-00504-MMD-VP, 2014 WL 301002, at *5 (D. Nev. Jan. 27, 2014) (quoting *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994)). Under LPR 1-20, a decision to stay litigation depends on "the circumstances of each particular case, including without limitation: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and the trial of the case, and (3) whether discovery is complete and a trial date has been set."

### A. Undue Prejudice

Defendants argue that there is no prejudice to Plaintiffs if a stay is granted because discovery is complete, the reexamination proceeding will likely result in additional evidence to be used in this lawsuit, and the Court and all parties will be able to rely on the expertise of the USPTO. Plaintiffs argue that they will suffer a tactical disadvantage if a stay is issued because dispositive motions have been briefed and orally argued and a stay will prejudice Plaintiffs' ability to obtain judgment and permanently enjoin Defendants from making further sales. They further argue that the reexamination process is likely to be futile because Defendants' argument for reconsideration fails to disclose the fact that the Japanese Patent Office did subsequently issue a patent to Plaintiffs despite the identified prior art.

The Court finds that any prejudice to Plaintiffs in this case is limited.

"Courts have repeatedly held that the delay inherent in the reexamination process does not, by itself, constitute undue prejudice." *Pacific Bioscience Laboratories, Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1066 (W.D. Wash. 2011) (citing *Implicit Networks, Inc. v. Adv. Micro Devices, Inc.*, No. C08-184JLR, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009) (collecting cases)). As was discussed at oral argument, there is no evidence that Defendants are continuing to sell the allegedly infringing device. The fact that Plaintiff has not requested preliminary injunctive relief also supports a finding that a stay would not be unduly prejudicial; "that [a party] has not moved for a preliminary injunction also weakens its undue prejudice claim because even if a stay prejudiced [a party], money damages could later make it whole." *ACRES 4.0 v. IGT*, No. 2:21-CV-01962-GMN-BNW, 2022 WL 22247952, at *3 (D. Nev. Oct. 25, 2022)*; see also Unwired Planet*, 2014 WL 301002, at *6 (that plaintiff had not yet sought an injunction is a fact which weighs in favor of granting a stay); *Visual Interactive Phone Concepts, Inc. v. Samsung Telecomm. Am., LLC*, No. 11-12945, 2012 WL 1049197, at *3 (E.D. Mich. Mar. 28, 2012) (same); *Equipements de Transformation IMAC v. Anheuser-Busch Companies, Inc.*, 559 F. Supp. 2d 809, 816 (E.D. Mich. 2008), *modified in part on reconsideration*, No. 07-13306, 2008 WL 3852240 (E.D. Mich. Aug. 18, 2008) (same). Thus, Plaintiffs have not shown that they suffer undue prejudice due to a delay in relief being granted. Additionally, as is discussed above, because the parties failed to follow the local patent rules, Plaintiffs' dispositive motions are premature and will not be ruled on at this time. This factor weighs in support of a stay.

**B. Simplification of Issues**

Defendants argue that a stay will simplify the issues in this case because it will allow the USPTO to determine whether the prior Japanese art references impact validity of the patent as to claims 1 and 7, which is at issue in this case. If those claims are determined to be invalid by the USPTO, this issue will be

disposed of. If the claims survive, they will have been clarified by the USPTO's analysis. Defendants further cite to USPTO Ex Parte Reexamination Filing Data, which shows that 92.4% of ex parte reexamination requests are granted, and 78.1% of reexaminations by third party requesters result in claims being cancelled or changed. (ECF No. 90-2.) In response, Plaintiffs argue that it is unlikely that the reexamination results will simplify this case because it will be futile, as the prior art references did not preclude a Japanese Patent from being issued, and likely won't cause U.S. patent claims to be invalidated.

The fact that the Japanese Patent Office found that the prior Japanese art references did not prevent the issuance of a Japanese Patent does not mean that the USPTO will come to the same result as to the U.S. patent. As such, a decision by the USPTO invalidating or changing claims 1 or 7 of the patent could simplify issues in this case. *Pacific Bioscience*, 760 F. Supp. 2d at 1064 (granting stay noting that some claims at issue in litigation could emerge from reexamination changed or cancelled). If reexamination is granted, "regardless of the outcome of the reexamination, the court will nevertheless have the benefit of the USPTO's expertise, analysis of the [] patent claims, and evaluation of the relevant prior art." *Id.* at 1066 (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988)). The fact that the USPTO has granted the request for reexamination further supports a finding that the stay may simplify issues in this case. *See id.* at 1064-65. ("Because there is a greater than 75% chance that some of the claims will emerge from reexamination either changed or cancelled ...and because all of the claims of the '691 patent at issue in this litigation are subject to the USPTO's reexamination...it is likely that at least some of the claims will be altered or cancelled."). Accordingly, this factor weighs in favor of a stay.

### C. Stage of Litigation

The stage of litigation in this case is confusing due to the parties' failure to adhere to the Local Patent Rules for this District, resulting in the filing of

premature motions. So while discovery has been completed, the entire claim construction process has yet to occur in this case, no dates have been proposed or set for it, dispositive motions regarding the patent claims will need to be re-filed at a later date, and no trial date has been set. Accordingly, the current posture of the case, though unusual, weighs in favor of granting a stay. *See Unwired Planet*, 2014 WL 301002, at *6 (granting stay where discovery had begun, claim construction hearing had occurred and no trial date was set); *see also Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 277 F.R.D. 84, 89 (W.D.N.Y. 2011) (same); *ESN, LLC v. CISCO Systems, Inc.*, No. 5:08–cv–20, 2008 WL 6722763, at *5 (E.D. Tex. Nov. 20, 2008) (this factor weighed in favor of a stay even where 20,000 pages of documents had been produced and claim construction hearing and trial dates had been set).

In sum, all three factors weigh in favor of granting Defendants' motion to stay proceedings. While Plaintiffs argue that this motion was filed as a "dilatory tactic" at a late stage in the proceedings, the failure of the parties to follow the Local Patent Rules means that this case is at an earlier stage in the proceedings irrespective of the stay and renders Plaintiffs' dispositive motions premature. And, Plaintiff has not demonstrated that a stay will cause undue prejudice.

Accordingly, the Court stays further proceedings in this action pending the outcome of Defendants' request for reexamination with the USPTO.

## IV. Defendants' Motion for Judgment on the Pleadings on NDTPA Claim (ECF No. 74)

Defendants argue that judgment on the pleadings should be granted on Plaintiffs' NDTPA claim because (1) it is not adequately plead, and (2) it is barred by the statute of limitations.[3] The Court disagrees and denies this motion on both grounds.

---

[3] Defendants also argue that they are entitled to attorneys' fees. Because the Court denies Defendants' motion, the Court does not address this argument.

1    **A. Legal Standard**

2    A party may move for judgment on the pleadings "[a]fter the pleadings are

3    closed-but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). When

4    considering a motion for judgment on the pleadings, the court must accept as

5    true all material allegations in the complaint and view them in the light most

6    favorable to the plaintiff. *NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir.

7    1986). Judgment on the pleadings is only proper "when the moving party clearly

8    establishes on the face of the pleadings that no material issue of fact remains to

9    be resolved and that it is entitled to judgment as a matter of law." *Enron Oil*

10   *Trading & Transp. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997)

11   (citing *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir. 1996),

12   *cert. denied*, 519 U.S. 1081 (1997)). The Court should only dismiss the case if "it

13   appears beyond a doubt that plaintiff can prove no set of facts in support of his

14   claim which would entitle him to relief." *Sun Savings and Loan Ass'n v. Dierdorff*,

15   825 F.2d 187, 191 (9th Cir. 1987). Consideration of matters outside of the

16   pleadings converts the motion for judgment on the pleadings into a motion for

17   summary judgment. Fed. R. Civ. P. 12(d).

18   Defendants ask, in the alternative, that the Court dismiss the NDPTA claim

19   under Fed. R. Civ. P. 12(b)(6).  A court may dismiss a complaint for "failure to

20   state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly

21   pled complaint must provide "a short and plain statement of the claim showing

22   that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v.*

23   *Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual

24   allegations, it demands more than "labels and conclusions" or a "formulaic

25   recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662,

26   678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be

27   enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to

28   survive a motion to dismiss, a complaint must contain sufficient factual matter

to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

## B. Analysis

### 1. Pleading of NDTPA Claim

To state a claim under the NDTPA, a plaintiff must allege "that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). Plaintiffs' complaint alleges violations of the NDTPA under NRS 598.0915(1), which prohibits knowingly passing off goods or services for sale or lease as those of another person, NRS 598.0915(2), which prohibits knowingly making a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease, and NRS 598.0915(3), which prohibits making a false representation as to affiliation, connection, association with or certification by another person.

Additionally, the heightened pleading standards under Fed. R. Civ. P 9(b) applies to NDTPA claims based on misrepresentations.[4] Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." *Allstate Ins. Co. v. Belsky*, No. 215-CV-02265-MMD-CWH, 2017 WL 7199651, at *7 (D. Nev. Mar. 31, 2017) ("Consumer fraud claims brought under this statute are subject to Rule 9(b)'s heightened pleading requirements.") (citing *Brown v. Kellar*, 636 P.2d 874, 874 (Nev. 1981)). In order to satisfy Rule 9(b), the complaint must include "an account of the time, place, and specific content of the false

---

[4] This Court has previously reserved decision on whether the heightened pleading requirements of Rule 9(b) apply to all NDTPA claims, or only those based on misrepresentations. *Donor Network West v. Nevada Donor Network*, No. 3:23-CV-00632-ART-CSD, 2025 WL 326980, at *4 (D. Nev. Jan. 29, 2025). Because here all of Plaintiffs' NDTPA claims allege misrepresentations, Rule 9(b) applies.

representations as well as the identities of the parties to the misrepresentations." *Cuadros v. State Farm Fire and Cas. Co.*, No. 2:16-CV-2025-JCM-VCF, 2017 WL 2683681, at *4 (D. Nev. June 20, 2017) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)); *see also Donor Network*, 2025 WL 326980, at *4.

Defendants first argue that Plaintiffs' claim fails to meet the pleading standard under Rule 9(b) because they fail to state their allegations with particularity. The Court disagrees.

Plaintiffs allege that Defendants knowingly entered into contracts or relationships with third parties to purchase bag sealing devices which infringe on Plaintiffs' patent, with the purposes of re-selling the devices. (ECF No. 71 at 4.) Specifically, Plaintiffs allege that Defendants have admitted to purchasing a significant quantity of infringing devices from a vendor in Florida. (*Id.*). Plaintiffs allege that Defendants have sold the infringing devices at state and county fairs in Iowa, Kentucky, Indiana, Nevada, and Idaho, as well as at trade shows in 2017, 2018, and 2019. (*Id.* at 5-6.) Plaintiffs allege that Defendants made false representations about the infringing devices by identifying them at trade shows as "Gripstix," "Grip Sticks," and "Lock and Seal Sticks." (*Id.* at 6.)

Plaintiffs have therefore provided the time (2017-2019), place (Florida; state and county fairs in certain states), specific content of the representations (identifying the infringing device as "Gripstix," "Grip Sticks," and "Lock and Seal Sticks"), and the parties to the misrepresentation (customers). *See Cuadros*, 2017 WL 2683681, at *4 (citing *Swartz*, 476 F.3d at 764). Plaintiffs have plead their claim with sufficient particularity under Rule 9(b).

As to the alleged violation of NRS 598.0915(1), Plaintiffs have alleged that Defendants' knowingly sold the infringing device, which Plaintiffs have a patent for, under the name "Gripstix," "Grip Sticks," and "Lock and Seal Sticks" at trade shows and fairs. This is sufficient at the pleading stage to allege that Defendants "knowingly pass[ed] off goods or services for sale or lease as those of another

person." NRS 598.0915(1).

As to the alleged violations of NRS 598.0915(2) and (3), Plaintiffs have alleged that Defendants made a knowing misrepresentation by identifying the infringing devices as "Gripstix," "Grip Sticks," and "Lock and Seal Sticks" at trade shows and fairs. This is sufficient at the pleading stage to allege that Defendants "knowingly ma[de] a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease," as prohibited by NRS 598.0915(2), and "ma[de] a false representation as to affiliation, connection, association with or certification by another person," as prohibited by NRS 598.0915(3).

In sum, the Court finds that Plaintiffs have adequately plead a cause of action under the NDTPA under both Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 12(b)(6). Taking all factual allegations as true, Plaintiffs have plead a set of facts which would entitle them to relief. *See Sun Savings,* 825 F.2d at 191. Plaintiffs' complaint also contains sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Defendants also argue that Plaintiffs' fail to plead reliance and causation as a part of their NDTPA claim. This Court recently found that the NDTPA permits claims that do not allege reliance. *Summit Ice Melt Systems, Inc., v. Hotedge, LLC*, No. 3:24-CV-00066-ART-CSD, 2025 WL 305202, at *8 (D. Nev. Jan. 27, 2025) ("the Court predicts that the Nevada Supreme Court would not require a showing of reliance to state a claim under the NDTPA in this case."). As to causation, Plaintiffs have alleged that due to Defendants' sale of the infringing device, they have suffered lost sales and product confusion. (ECF No. 71 at 7.) The Court therefore denies Defendant's motion on this ground.

### 2. Statute of Limitations

The statute of limitations for claims under the NDTPA is four years from the accrual of the action, which occurs upon discovery of the facts constituting

the deceptive trade practice. NRS 11.190(2)(d).[5] Defendants argue that Plaintiffs' NDPTA claims are barred by the statute of limitations because Plaintiffs admitted in their responses to interrogatories that First 2 Market discovered that Defendants were selling the devices on October 3, 2016, which, under agency principals, is imputed to Dae Sung and Sehyang. This would put the statute of limitations deadline at October 3, 2020.

The interrogatories Defendant relies on did not exist at the time the complaint was filed and cannot be incorporated by reference. The incorporation by reference doctrine permits a court to "consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2005). The complaint did not necessarily rely on the interrogatories, nor were the contents of them alleged in the complaint. Rather, the interrogatories are proffered by Defendants as a defense to the allegations in the complaint. *See Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1002 (9th Cir. 2018) ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims."). Thus, the interrogatories cannot be incorporated by reference and their consideration would convert the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). Because the Court declines to consider

---

[5] NRS 11.190(2)(d) states that an action may only be commenced within four years when it is "an action against a person alleged to have committed a deceptive trade practice in violation of NRS 598.0903 to 598.0999, inclusive, but the cause of action shall be deemed to accrue when the aggrieved party discovers, or by the exercise of due diligence should have discovered, the facts constituting the deceptive trade practice."

the interrogatories, judgment on the pleadings is not appropriate as to Defendants' statute of limitations defense.

## V.    Defendants' Motion for Summary Judgment on Affirmative Defenses (ECF No. 75)

Defendants moved for summary judgment on the following affirmative defenses as to Plaintiffs' claim for patent infringement under 35 U.S.C. § 271: equitable estoppel, inequitable conduct, and unclean hands. For the reasons discussed below, the Court denies Defendants' motion as to equitable estoppel and as to unclean hands, except for the theory regarding misrepresentations to the USPTO. The Court denies without prejudice Defendants' motion as to the unclean hands defense under the theory regarding misrepresentations to the USPTO and as to the inequitable conduct defense in light of the stay.

### A. Summary Judgment Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record

that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists[.]" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). However, where a where a moving party fails to meet their initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-1103 (9th Cir. 2000).

Here, because Defendants move for summary judgment on their affirmative defenses, they bear the burden of demonstrating the absence of a genuine issue of material fact as to each asserted defense.

### B. Factual Allegations in Support of Affirmative Defenses

Defendants allege the following conduct by Plaintiffs, described in more detail below in relation to each defense, in support of their affirmative defenses:

Plaintiff Dae Sung falsely represented that it was the owner of the '696 patent in this action, in other litigation, in a cease-and-desist letter, and in forms filed with the USPTO; Plaintiff Dae Sung failed to disclose material information to the USPTO in the prosecution of the U.S. Patent; Plaintiffs knowingly misrepresented that they had personal jurisdiction and venue in prior lawsuits, knowingly misrepresented the amount of damages in this action, and intentionally withheld evidence, mistranslated evidence, and submitted false testimony regarding evidence in this action.

### C. Analysis

#### 1. Equitable Estoppel

In the context of a patent claim, there are three elements to equitable

estoppel: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992), *abrogated by SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328 (2017). Because Defendants fail to show that there is no genuine dispute of material fact as to elements (1) and (3), the Court denies summary judgment on this defense. The Court does not address the second element of reliance as Defendants' motion fails as to the other two elements.

### a. Element (1): Misleading Conduct

Defendants allege that Dae Sung falsely represented that it was the "owner" of the '696 patent in this action (along with several previous actions to enforce the '696 patent against various parties including the Irwins), citing to the complaints in prior actions. (ECF Nos. 73-2; 73-4; 73-8; 75-2 at 10-17, 19-34, 37-45.) Defendants further allege that Dae Sung represented itself as the "owner" of the patent in other communications, including a cease and desist letter and in forms filed with the USPTO. (*Id.* at 5-9, 35-36, 53-55, 46-57.) Defendants state that they did not find out that Sehyang was the owner of the '696 patent until June 9, 2023, when Dae Sung responded to their discovery requests. They assert that this misrepresentation about Dae Sung's standing to enforce the patent led Defendants to reasonably infer that Sehyang would not enforce the patent against them.

Plaintiffs respond that there are several disputes of material fact as to this defense. Plaintiffs have provided evidence which could support a factual finding that Dae Sung was a co-owner with Sehyang of patent rights. Plaintiffs have pointed to several documents and supporting declarations in which Dae Sung

and Sehyang agreed that technology which Dae Sung improved, expanded, substituted, or added to the patented invention would be commonly owned by both companies. (ECF Nos. 42-1 at 2; 42-2 at 2; 41-3 at 3; 41-4 at 4.) Plaintiffs have also provided declarations which may support a finding that the GRIPSTIC® was a product that Dae Sung improved, expanded, substituted or added under the '696 patent, providing for common ownership of patent rights. (ECF Nos. 42-1 at 2; 42-2 at 2.)

Further, Plaintiffs point out that Sehyang was identified in the original complaint in this action as the assignor of patent rights and patent enforcement to Dae Sung. (ECF No. 1 at 3.) The complaint and attached patent clearly state that the '696 patent was issued listing Jae-Ho Ha and Seung-Taek Lee as inventors and Sehyang as the assignee of the patent. (*Id.*; ECF No. 1-2 at 1.) The complaint then states that Seyhang assigned the patent to Dae Sung. (ECF No. 1 at 3.) This language in the original complaint cuts against Defendants' arguments that they were not aware that Sehyang was the owner of the patent and that Dae Sung's statements of ownership caused them to believe that Sehyang was not intending to pursue their patent rights.

The Court finds that Plaintiffs have set forth evidence which creates a triable issue of material fact as to whether Dae Sung is a co-owner of the '696 patent rights and whether Defendants were led to reasonably infer that Sehyang did not intend to enforce its patent.

### b. Element (3): Material Prejudice

Defendants argue that they have been prejudiced because they have "endured extensive motion practice which was deemed moot upon Sehyang joining in the [p]resent [a]ction," and have had to re-write and reargue motions and revisit discovery. (ECF No. 75 at 25.) Had they known that Dae Sung lacked standing to pursue the patent claims, they would have immediately moved to dismiss this action. Defendants also argue that the statute of limitations has been

artificially extended due to Dae Sung's alleged misrepresentations. Plaintiffs counter that it is not prejudicial for a defendant to have to engage in motion practice or discovery, and that Defendants' statute of limitations argument has not been altered by Sehyang's entry into the case.

The Court agrees with Plaintiffs. Prejudice in the context of equitable estoppel may be "a change of economic position or a loss of evidence." *A.C. Aukerman*, 960 F.2d at 1043; *see also Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371-72 (Fed. Cir. 2001) (describing economic prejudice as "a change in the economic position...during the period of delay that would not have occurred had [plaintiff] sued earlier," and defense prejudice as when a defendant "would be unable to present a full and fair defense on the merits in view of [plaintiffs'] delay"). Defendants here allege neither economic nor evidentiary prejudice and have offered no case law in support of their contention that engaging in litigation constitutes prejudice in the context of equitable estoppel in a patent case. As to Defendants argument that the statute of limitations has been artificially extended, the Court does not see how this is the case; Defendants have not put forth an argument that Plaintiffs' patent claim is outside of the statute of limitations.  Defendants have failed to allege facts which demonstrate prejudice as a matter of law. Therefore, Defendants have necessarily failed to meet their burden of demonstrating that there is no genuine issue of material fact as to prejudice.

Because Defendants have failed to show that there is no genuine dispute of material fact as to elements (1) and (3) of equitable estoppel, the Court denies Defendants' motion for summary judgment as to this defense.

### 2. Inequitable Conduct

"Inequitable conduct arises when a patent applicant, or its representative, engages the PTO with a lack of candor, good faith, or honesty." *ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1059 (D. Nev. 2016) (citing *Molins*

*PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995)). A party asserting the defense of inequitable conduct must also prove an intent to deceive the USPTO, which can be shown through a pattern of lack of candor. *Therasense, Inc. v. Becton, Dickinson and Co., et al.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011); *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1351 (Fed. Cir. 2017). A finding of inequitable conduct can render an entire patent unenforceable. *ESCO Corp.*, 158 F. Supp. 3d at 1059.

Under 37 C.F.R. § 1.56(a), there is a duty of each individual associated with the filing and prosecution of a patent application to disclose all information known to be material to patentability. Defendants argue that Sehyang failed to disclose material information to the USPTO in the prosecution of the '696 patent by failing to disclose two prior Japanese art references and that intent to deceive can be inferred from Plaintiffs' other alleged misrepresentations.

The Court finds that the USPTO's reexamination process may simplify the issues in this defense because the USPTO is considering the effect of the prior art references at issue on patentability. The Court therefore denies without prejudice Defendants' motion for summary judgment as to the defense of inequitable conduct.

### 3. Unclean Hands

The doctrine of unclean hands "bars relief to a [a party] who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Platte River Ins. Co. v. Liu*, No. 2:20-CV-00723-GMN-EJY, 2023 WL 3724237, at *5 (D. Nev. May 26, 2023) (quoting *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989)). A party asserting this defense must show that the other party's "conduct is inequitable and that the conduct relates to the subject matter of the claim." *Id.* (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 909 (9th Cir. 2003)).

Defendants allege that all of the misconduct supporting their arguments for equitable estoppel and inequitable conduct also supports a defense of unclean hands. The Court has already addressed some of this alleged conduct—alleged misrepresentations of ownership—and found material disputes of fact precluding summary judgment. The Court will not address these allegations again here.

In addition, Defendants allege that Plaintiffs (1) knowingly misrepresented personal jurisdiction and venue in prior lawsuits to enforce the '696 patent, (2) knowingly misrepresented damages in the present action to be $10 million when the actual lifetime sales are $4,000, (3) intentionally withheld licenses relating to the '696 patent  (4) intentionally mistranslated and submitted false testimony regarding the accuracy of the November 17, 2003 license, and (5) failed to disclose material information to the USPTO

### a. Misrepresentation of Personal Jurisdiction

In support of their argument that Plaintiffs have intentionally misrepresented personal jurisdiction and venue in prior lawsuits to enforce the '696 patent, Defendants submitted complaints from three prior lawsuits: (1) The "Ohio Action", 3:21-cv-01448, filed in the Northern District of Ohio against D&B Sales, Inc., and Dale and Bobbi Irwin, (2) the "Blaylock Action," 3:19-cv-01643, filed in the Northern District of Ohio against Blaylock Marketing, and Leslie, Curtis, and Susanne Blaylock, and (3) the "Shepherd Action," 3:21-cv-01495, filed in the Northern District of Ohio against Mary Shepherd. (ECF Nos. 73-2; 73-4; 73-8.) Each complaint alleged that personal jurisdiction was proper in the Northern District of Ohio because the defendants transact business, engage in infringing conduct, and/or induce others to engage in infringing conduct in the forum state, and alleged that venue was proper because defendants do business in the state, have committed acts of infringement in the state and district, and have established business in the district. (ECF Nos. 73-2 at 4; 73-4 at 5; 73-8 at 4.) Defendants have also submitted affidavits filed by defendants in each lawsuit

attesting to facts which indicate that personal jurisdiction was improper. (ECF Nos. 73-5; 73-6; 73-7; 73-9; 53-2; 53-3.) Plaintiffs respond that at the time of the filing of these lawsuits, they believed personal jurisdiction and venue were proper in the State of Ohio.

The Court notes that none of the courts in these three actions ruled on whether personal jurisdiction was proper.[6] Additionally, Defendants have provided no evidence that Plaintiffs filed these cases knowing that personal jurisdiction was lacking. Therefore, Defendants have failed to meet their burden of showing that there is no dispute of fact, and summary judgment is not appropriate on this ground.

### b. Misrepresentation of Damages in Present Action

Defendants next argue that Plaintiffs misrepresented the damages in this action when they estimated damages to be $10 million in the Stipulated Discovery Plan. (ECF No. 16.) Defendants have provided a declaration and deposition of Bobbi Irwin, stating that Defendants lifetime sales of the alleged infringing device is approximately $4,000. (ECF Nos. 53-3; 47-8.)

Plaintiffs counter that at the time the Stipulated Discovery Plan was filed on June 24, 2022, they did not have any information from Plaintiffs regarding their lifetime sales. Plaintiffs' have submitted a declaration from Plaintiffs'

---

[6] The Court takes judicial notice of the dockets in the Blaylock, Shepherd, and Irwin cases, all filed in the Northern District of Ohio. *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1207 (C.D. Cal. 2004) (citing *Mir v. Little Company of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988)). In *Dae Sung Hi Tech Co., Ltd. v. Blaylock Marketing, LLC et al*, Case No. 3:19-cv-01643, defendants' motion to dismiss for lack of subject matter jurisdiction was fully briefed on November 11, 2019 (ECF No. 22), however, the parties subsequently filed a consent judgment, and the motion to dismiss was never ruled on (ECF No. 24). In *Dae Sung Hi Tech Co., Ltd. et al v. Shepherd*, 3:21-cv-01495-JJH, plaintiffs filed a voluntary notice of dismissal (ECF No. 8) and defendant's motion to dismiss for lack of personal jurisdiction was never ruled on. Finally, in *Dae Sung Hi Tech Co., Ltd. et al v. D&B Sales, Inc. et al*, Case No. 3:21-cv-01448-JZ, no motion to dismiss for lack of personal jurisdiction was filed and plaintiffs voluntarily dismissed the action (ECF No. 12).

counsel Derek R. Noack attesting to this fact. (ECF No. 78-1.) The declaration and deposition of Bobbi Irwin stating lifetime sales of approximately $4,000 occurred on July 28, 2023, and June 6, 2023. (ECF No. 53-3; 47-8.)

Because Plaintiffs have provided evidence which tends to show that they were not aware of the Defendants' lifetime sales at the time they estimated damages, there is at least a genuine dispute of material fact as to whether Plaintiffs misrepresented the damages in this action.

### c. Withholding of Evidence

Defendants next assert that Plaintiffs have intentionally withheld licenses relating to the '696 patent, as well as portions of the November 17, 2003 license. Defendants argue that Plaintiffs were obligated to produce the November 17, 2003 license within 14 days of the Initial Scheduling Conference (June 6, 2022) under LPR 1-7(d), and that they only produced the license on July 7, 2003, when opposing Defendants first motion to dismiss. (ECF No. 42-4.) Defendants also argue that the November 17, 2003 license which has been produced is missing sections. (ECF No. 42-4.) Finally, Defendants argue that Plaintiffs have intentionally withheld licenses relating to the '696 patent, pointing to language in three declarations which might indicate the existence of a license which has not been disclosed. (ECF Nos. 42-1 at 2; 41-2 at 2; 42-3 at 2) (all stating "Sehyang Industrial Co., Ltd. has also separately licensed DAE SUNG HI TECH CO., LTD with respect to the making, importing, use, and sells [sic] of products under the '696 patent.").

Generally speaking, "a defense of unclean hands may not be based on discovery misconduct." *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1038 (S.D. Cal. 2018) (internal quotations omitted). In the case of alleged discovery abuses, the aggrieved party may seek relief under Fed. R. Civ. P. 37. *Id*; *see also X-It Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 601 (E.D. Va. 2001) (appropriate remedy for alleged discovery abuses is a motion

to compel or motion for sanctions). There is one exception to this rule—a line of cases "suggesting that the unclean hands defense may be available where the other party engaged in discovery misconduct to conceal fraud concerning the underlying intellectual property rights at issue in the litigation." *Kaseberg*, 360 F. Supp. 3d at 1038 (collecting cases).

Defendants have not filed a motion to compel or motion for sanctions in this action. While Defendants may be attempting to defend this action based on this exception, the Court has already found that there are at the very least genuine issues of material fact as to whether Plaintiffs have made any misrepresentations to the USPTO or regarding their ownership status. *See supra* section V.C.1.a. Therefore, summary judgment is inappropriate on this issue.

### d. Mistranslation of November 17, 2003 License and False Testimony

Defendants argue that Plaintiffs have intentionally mistranslated the November 17, 2003 license because there are material differences between the Korean and English licenses, pointing to differences between the language of the English license and the certified translation of the Korean license (ECF Nos. 42-2; 48-3.) Further, Defendants allege that because of this, the November 17, 2003 license is not true or accurate, and Plaintiffs' declarations which attest to its accuracy are therefore false testimony. Plaintiffs counter that both the Korean and English licenses were executed on the same day, and thus could not have been intentionally mistranslated by Plaintiffs. They point to the licenses, which are both dated November 17, 2003. (ECF Nos. 78-2 at 2, 5.)

There is at least a genuine dispute of material fact as to whether the November 17, 2003 license is properly translated, which necessarily means that there is a factual dispute as to whether declarations which attest to its accuracy are false. Summary judgment is thus inappropriate on this issue.

//

### e. Misrepresentations to USPTO

As in their inequitable conduct claim, Defendants allege that Sehyang failed to disclose material information to the USPTO in the prosecution of the '696 patent by failing to disclose two prior Japanese art references. As with that claim, the Court finds that the USPTO's reexamination process may simplify the issues in this defense because the USPTO is considering the effect of the prior art references at issue on patentability. The Court therefore denies without prejudice Defendants' motion for summary judgment as to the defense of unclean hands only as to this theory.

For the reasons stated, the Court denies Defendants' motion for summary judgment as to the defense of equitable estoppel and as to the defense of unclean hands, except for their theory regarding misrepresentations to the USPTO. Because the Court finds the inequitable conduct defense and the unclean hands defense under the theory regarding misrepresentations to the USPTO are implicated by the Court's stay, the Court denies the motion for summary judgment as to these claims without prejudice.

## VI.   CONCLUSION

It is therefore ordered that Defendants' motion for judgment on the pleadings as to Plaintiffs' NDTPA claims (ECF No. 74) is DENIED.

It is further ordered that Defendants' motion for summary judgment on affirmative defenses (ECF No. 75) is DENIED as to the defense of equitable estoppel. Defendants motion is DENIED as to the defense of unclean hands except as to the theory that Sehyang made misrepresentations to the USPTO, which is denied without prejudice. Defendants' motion is also and DENIED without prejudice as the defense of inequitable conduct.

It is further ordered that Defendants' motion to stay the case (ECF No. 90) is GRANTED. This action is STAYED pending the outcome of Defendants' request for reexamination by the USPTO. Defendants are ordered to file a status update

as to the outcome of the request within 7 days of any decision by the USPTO.

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 81) and motion for a permanent injunction (ECF No. 80) are DENIED without prejudice and with leave to amend after the stay is lifted and the parties have complied with the Local Patent Rules to complete the claim construction process. After the stay is lifted, the Court will order the parties to submit a joint scheduling order for the claim construction process, dispositive motions, and mandatory settlement conference under the Local Patent Rules.

Dated this 18th day of February 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE